## Case No. 8,800.

### McGINNIS v. The GRAND TURK.

[9 Pittsb. Leg. J. 257; 4 West. Law Month. 80; 2 Pittsb. Rep. 326.]

District Court, W. D. Pennsylvania. 1862.

SEAMEN'S WAGES — SHERIFF'S SALE — MINORS — RIGHT OF FATHER TO MAINTAIN ACTION—RENUNCIATION—WATCHMAN—MARITIME LIENS.

1. A sheriff's sale of a steamboat does not discharge the lien of sailors' wages. Otherwise, if the wages are due to the owner of the boat.

2. A father may maintain an action, in admiralty, for the wages of his minor children, but it is a right which may be renounced or forfeited.

3. He may renounce it by voluntarily allowing his child to have the exclusive use of the fruits of his own industry; or he may forfeit his right by neglecting to perform those duties which are the foundation of that right.

4. A watchman, not during the navigation of the vessel, nor when she had cargo on board, but exclusively in a home port, at the Marine Railway, and when she was laid up for repairs, has no lien for his wages.

[Distinguished in Wishart v. The Jos. Nixon, 43 Fed. 928.]

5. This is not maritime service. It is the work of a landsman, rather than a sailor. It is completed before the voyage is begun, or after it is ended. It is, therefore, not a maritime contract, which can be enforced in a court of admiralty.

In admiralty.

Mr. Woods, for libellant.

Mr. Barton, for claimant.

McCANDLESS, District Judge. The libellant, a minor, by his next friend, R. B. Cool, sues for wages as a watchman on board the steamboat "Grand Turk," of which Wm. McGinnis, his father, was the owner. The interest of the father was, by a judicial sale and subsequent conveyance, vested in Geo. W. Coffin, who intervened to resist the payment.

As a general principle, it is not denied, that the lien of a sailors' wages is not discharged by a sheriff's sale,—Gallatin v. The Pilot [Case No. 5,199]; but it is contended, that the son being a minor, the wages were due to the father. If this be so, a sale by the

sheriff confers all the title which the defendant in the execution had, and is equivalent to his own deed, with special warranty. The case would then present this bare proposition: Can a vendor, for a consideration paid, retain a lien against property, which he has thus sold, and delivered, in the hands of his vendee: and that, too, for a debt due by himself to himself? Certainly he cannot, for when a chattel is sold and delivered to the vendee, the vendor has neither jus in re nor ad rem. neither a property in nor a lien on the thing sold. Gallatin v. The Pilot [supra].

In the present case, this all depends upon the relation subsisting between the father and the son. As a general proposition, it is undoubtedly true, that the father is entitled to the earnings of his children during their minority, nor is there any doubt that he may maintain a suit in admiralty for their wages earned in maritime service.—Plummer v. Webb [Case No. 11,233]; but this is not, like the duties of a parent, a right indissolubly attached to the paternal relation. It is a right which may be either renounced by the father or forfeited. He may renounce it, by voluntarily allowing his child to have the exclusive use of the fruits of his own industry, and he may forfeit his right by neglecting to perform those parental duties which are the foundation of that right. The Etna [Id. 4,-542]. The proofs have shown clearly that for two years. the father permitted the son to hire out, receive his own wages, and to have the control of his own actions, and it does not appear that this renunciation of the parental guardianship was attended with any results prejudicial to the minor. If the case depended upon this point, the libellant would be entitled to a decree, for courts of admiralty will always take care of the interests of minors, even against the grasping disposition of their parents.

But there is a bar to a recovery here, which meets us at the very threshold. This is not a maritime contract. which can be enforced in a court of admiralty. The libellant was a watchman. not during the navigation of the boat. or while she had cargo on board, but exclusively in the home port, at the Marine Railway. and when she was laid up for repairs. This was no maritime service. It was the work of a landsman rather than a sailor. It had nothing to do with the navigation of the vessel, no part of the services being rendered while the vessel was in motion. Like the case of McDermott v. The S. G. Owens [Case No. 8,748], decided by my Brother Grier. "the services are performed on a contract which is neither made at sea nor for service to be performed at sea; both (that is the contract and service) were in the port of Philadelphia, and within the county of Philadelphia. The ship was safely moored at the wharf, and was in the actual possession of the owners; the service had no agency in bringing her in; he was not carrying freight." For these reasons (which are quoted from Gil.

Ad. Rep. 3), with others, the court decide that a seaman. whose wages have been paid up to the termination of the voyage, but who afterwards remains on board the vessel moored at the wharf, has no claim for services which a court of admiralty will enforce. The service performed here by the defendant as watchman is in no sense maritime. Like that of the "stevedore," "it is completed before the voyage is begun, or after it is ended," and has none of the characteristics of a maritime contract.

The libel is dismissed, with cost.